UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| **MARY PLANCK,** | **CIVIL ACTION NO. 5:14-316-KKC** |
| **Plaintiff,** | |
| **V.** | **MEMORANDUM OPINION AND ORDER** |
| **ENERSYS DELAWARE, INC., ED BAUER, and DENNIS BRAUMBAUGH,** | |
| **Defendants.** | |

This matter is before the Court on plaintiff Mary Planck's motion to remand (DE 4).

Planck brought this action in Madison Circuit Court alleging that EnerSys Delaware, Inc.

("EnerSys"), Ed Bauer, and Dennis Braumbaugh unlawfully terminated her employment

with EnerSys. Defendants assert that plaintiff fraudulently joined Bauer and Braumbaugh

to defeat federal diversity jurisdiction. For the following reasons, plaintiff's motion to

remand will be granted.

## I. BACKGROUND

In June 2011, Planck began working as a "labeler" for EnerSys, a battery

manufacturer, at its Richmond, Kentucky plant. (DE 1-1 Compl. at ¶¶ 7, 12.) On or about

June 3, 2013, she applied for, and received, the "Wastewaters Operator's position." (DE 1-1

Compl. at ¶ 12.) On her first day as a Wastewaters Operator, Planck developed "a rash on

her arms, neck, face, chest, and stomach" and "experienced extreme headaches" while

working in the Fiberglass Tubing Plant. (DE 1-1 Compl. at ¶ 13.) After notifying her

supervisor, plaintiff was referred to the company doctor, Dr. Ruth Ann Combs, who

removed plaintiff from the Fiberglass Tubing Plant and prescribed medication to treat the

rash. (DE 1-1 Compl. at ¶ 14.) Planck's supervisor placed her on a temporary suspension. (DE 1-1 Compl. at ¶ 15.)

On June 7, 2013, plaintiff was en route to an appointment with Dr. Combs when her vehicle collided with the vehicle of Dennis Braumbaugh, EnerSys Plant Manager. (DE 1-1 Comp. at ¶ 16.) Planck received medical treatment for her injuries and was released to return to work two weeks later. (DE 1-1 Compl. at ¶¶ 17, 18.)

When Planck returned to EnerSys, "she was placed on the same machine as before in the Fiberglass Tubing Plant," and she again developed a rash and experienced headaches. (DE 1-1 Compl. at ¶ 18.) Plaintiff reported her condition to her supervisor and was ultimately instructed by the company doctor to schedule an appointment with an allergy specialist. (DE 1-1 Compl. at ¶ 18.) Planck subsequently met with an allergist who advised that plaintiff "could not work around fiberglass or the chemicals used in the Fiberglass Tubing Plant" and wrote plaintiff a note stating that she needed to be removed from the Fiberglass Tubing Plant. (DE 1-1 Compl. at ¶ 19.)

After the appointment, Planck reported the allergist's findings to Michelle Johns, a human resources assistant with Enersys. (DE 1-1 Compl. at ¶ 20.) Johns instructed Planck to attend a meeting with Ed Bauer, human resources official, on June 28, 2013. (DE 1-1 Compl. at ¶ 20.) At the meeting, plaintiff presented the allergist's note, and Bauer made a copy of it. (DE 5-1 Planck's Dep. at 149.) According to Planck, Bauer then informed her "if she could not work in the Fiberglass Tubing Plant then there was no job available and her separation papers would be sent to her."(DE 1-1 Compl. at ¶ 21.) Plaintiff asserts that she was not offered a transfer back to her previous position despite the fact that two male employees "disqualified themselves from a position and then later received transfers back to their previous positions[.]" (DE 1-1 Compl. at ¶¶ 23-24.)

2

On or about March 3, 2014, plaintiff filed this suit in Madison Circuit Court. She asserts three claims solely against EnerSys: (1) disability discrimination, in violation of the Kentucky Civil Rights Act ("KCRA"), KRS § 344.040; (2) sex discrimination, in violation of the KCRA, KRS § 344.040; and (3) promissory estoppel. (DE 1-1). She also advances a claim against EnerSys, Bauer, and Braumbaugh for terminating her employment in retaliation for requesting a reasonable accommodation, in violation of the KCRA, KRS § 344.280. (DE 1-1). Plaintiff seeks damages, costs, interest, and attorneys' fees. (DE 1-1).

Defendants timely removed the action to this Court based on federal diversity jurisdiction. (DE 1). A federal court has subject matter jurisdiction over civil actions where the amount in controversy exceeds $75,000.00 and the action is between citizens of different states. 28 U.S.C. § 1332(a). "In order for a defendant to remove a case to federal court based upon diversity jurisdiction, there must be complete diversity of citizenship both at the time the case is commenced and at the time the notice of removal is filed." *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.,* 176 F.3d 904, 907 (6th Cir. 1999).

Planck and defendants Bauer and Braumbaugh are all Kentucky citizens. (DE 1 Notice of Removal at 3; DE 1-1 Compl. at ¶¶ 1, 5.) However, defendants assert that the Court should disregard the citizenship of Bauer and Braumbaugh because plaintiff fraudulently joined them to this suit. (DE 1 Notice of Removal at 6-10.) Defendants argue that Planck cannot show that she engaged in a protected activity—as is required to establish a retaliation claim under the KCRA—and instead impermissibly relies on her status as a woman and allegedly disabled person. (DE 1 Notice of Removal at 6-10.) Accordingly, defendants contend that Planck cannot assert a colorable retaliation claim against the non-diverse Bauer and Braumbaugh, so there is complete diversity between the parties. (DE 1 Notice of Removal at 10.)

3

Planck filed motion to remand this action to Madison Circuit Court. (DE 4). She argues that she was engaged in a "protected activity" for purposes of the KCRA when she requested a reasonable accommodation for her disability and has otherwise established a prima facie claim for retaliation. (DE 4 Pl.'s Mot. to Remand at 5-8.) Therefore, plaintiff contends that she has a colorable retaliation claim against defendants Bauer and Braumbaugh and that they were not fraudulently joined. The parties do not dispute that the amount in controversy exceeds $75,000.00.

## II. FRAUDULENT JOINDER

"Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action." *Saginaw Hous. Comm'n v. Bannum, Inc.,* 576 F.3d 620, 624 (6th Cir. 2009) (citing *Jerome-Duncan*, 176 F.3d at 907). In determining whether the non-removing party asserted a colorable claim against a non-diverse party, the "court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the non removing party. All doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (citations omitted); *see also* 16 James Wm. Moore, *Moore's Federal Practice* § 107.14[2][c] (3d ed. 2013) ("If a possibility of a valid claim exists against the in-state defendant, the case is properly cognizable only in state court if the citizenship of that defendant would bar diversity jurisdiction."). A non-diverse defendant is fraudulently joined to the action if it is *clear* that the plaintiff cannot recover from the non-diverse defendant. *Casias v. Wal–Mart Stores, Inc.,* 695 F.3d 428, 432–33 (6th Cir. 2012). "A defendant attempting to prove fraudulent joinder thus faces a particularly heavy burden." *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.,* 512 F. App'x 485, 489 (6th Cir. 2013).

4

When engaging in a fraudulent joinder analysis, courts "apply a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias*, 695 F.3d at 433. As appropriate, "[t]he court may look to material outside the pleadings for the limited purpose of determining whether there are 'undisputed facts that negate the claim.'" *Id.* (quoting *Walker v. Phillip Morris USA, Inc.*, 433 F. App'x 946, 955–56 (6th Cir. 2011)). Therefore, "the court may . . . examine . . . affidavits and deposition testimony for evidence of fraud" to determine if a party has been fraudulently joined. *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). "However, the Court must be careful not to 'step[ ] from the threshold jurisdictional issue [of fraudulent joinder] into a decision on the merits.'" *Lindon v. Kakavand*, No. CIV.A. 5:13-26-DCR, 2013 WL 5441981, at *6 (E.D. Ky. Sept. 27, 2013) (alteration in original) (quoting *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990)).

## III. KCRA RETALIATION CLAIM

While KCRA claims cannot typically be asserted against individuals, KRS § 344.280 "plainly permits the imposition of liability on individuals" for acts of retaliation. *Morris v. Oldham Cnty. Fiscal Court,* 201 F.3d 784, 794 (6th Cir. 2000). To establish a prima facie case for retaliation, plaintiff must demonstrate that (1) she engaged in a protected activity; (2) this exercise of her civil rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.[1] *Carpenter v. Univ. of*

---

[1] Because Planck attempts to establish retaliation solely through circumstantial evidence, the Court employs the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007); *Kentucky Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 134 (Ky. 2003). Here, however, the parties' arguments focus solely on whether plaintiff can establish a prima facie case for retaliation and do not address the remainder of the *McDonnell Douglas* analysis. Accordingly, the Court will only consider whether Planck has established a colorable prima facie claim of retaliation against Bauer and Braumbaugh.

*Kentucky*, No. 2012-CA-000994-MR, 2015 WL 1304361, at *8 (Ky. Ct. App. Mar. 20, 2015) (citing *Brooks v. Lexington–Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004)). Planck argues that she engaged in statutorily protected conduct by requesting a reasonable accommodation for her disability. Defendants do not dispute that Planck satisfies the last three elements of the prima facie showing, and contend only that Planck has failed to demonstrate that she was engaged in a protected activity.[2] Defendants contest whether plaintiff actually requested a reasonable accommodation and contend that she simply relies on her status as a woman and an allegedly disabled individual to assert a claim of retaliation.

Under Kentucky law, protected activity consists of "oppos[ing] a practice declared unlawful by [KRS 344], or . . . fil[ing] a complaint, testify[ng], assist[ing] or participat[ing] in any manner in any investigation, proceeding, or hearing under [KRS 344.]" KRS § 344.280(1). Because the KCRA was modeled after federal law, Kentucky courts interpret the KCRA consistently with the Americans with Disabilities Act of 1990 ("ADA") and other federal law. *See* KRS § 344.040(1) (stating that one of the purposes of Chapter 344 is "[t]o provide for the execution within the state of the policies embodied in . . . the Americans with Disabilities Act of 1990"); *Howard Baer, Inc. v. Schave,* 127 S.W.3d 589, 592 (Ky. 2003) ("The Kentucky Civil Rights Act was modeled after federal law, and our courts have interpreted the Kentucky Act consistently therewith."); *Bryson v. Regis Corp.*, 498 F.3d 561,

---

[2] Neither plaintiff nor defendants include the second element (employer knowledge) their articulations of a prima facie retaliation claim. (DE 4 Pl.'s Mot. to Remand at 4; DE 5 Defs.' Resp. to Pl.'s Mot. to Remand at 5.) The Kentucky Supreme Court, however, included employer knowledge as the second element of a prima facie case in *Brooks v. Lexington–Fayette Urban County Housing Authority,* 132 S.W.3d 790, 803 (Ky. 2004). As explained by the Sixth Circuit, "[r]egardless of whether employer knowledge is a stand-alone element of a prima facie case of retaliation, it is fairly clear from Sixth Circuit case law that employer knowledge of a plaintiff's protected activity is required." *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 482 (6th Cir. 2008). Here, defendants do not claim that they were unaware of the actions that Planck argues constitute a protected activity.

569 n.5, 577 (6th Cir. 2007) ("[T]he same legal standards control the adjudication of claims brought under the KCRA, as under the ADA."). Although a person making a request for a reasonable accommodation might not literally "oppose" an unlawful practice or "participate" in the administrative or judicial complaint process, the Sixth Circuit and most circuits agree that a request for a reasonable accommodation is a protected act under the ADA. *See A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.,* 711 F.3d 687, 698 (6th Cir. 2013); *Baker v. Windsor Republic Doors,* 414 F. App'x 764, 777 n.8 (6th Cir. 2011); *Bryson,* 498 F.3d at 577.[3]

Thus, the question then becomes whether Planck's actions constituted a request for a reasonable accommodation. Defendants point to Planck's deposition testimony to argue that she relies on her status as a woman and allegedly disabled person, rather than a request for an accommodation, as the cause of her termination. (DE 5 Defs.' Resp. to Pl.'s Mot. to Remand at 5-7.) Indeed, defendants "disagree that Plaintiff ever sought a reasonable accommodation" during her meeting with Bauer. (DE 5 Defs.' Resp. to Pl.'s Mot. to Remand at 11 n.2.) Planck asserts that she requested an accommodation when she presented the allergist's note to Bauer. (DE 4 Pl.'s Mot. to Remand at 6.) She claims that "with the support of a doctor's note," she asked to "be removed from the tubing plant, and returned to her former position, or any other position for that matter[.]" (DE 4 Pl.'s Mot. to Remand at 6.) The Sixth Circuit has explained that although a plaintiff bears the burden of requesting a reasonable accommodation, the ADA does not require employees to "use the

---

[3] *See, e.g., Mayers v. Laborers' Health & Safety Fund of N. Am.,* 478 F.3d 364, 369 (D.C. Cir. 2007); *Freadman v. Metro. Prop. & Cas. Ins. Co.,* 484 F.3d 91, 106 (1st Cir. 2007); *Cassimy v. Bd. of Educ. of Rockford Pub. Sch.,* 461 F.3d 932, 938 (7th Cir. 2006); *Coons v. Sec'y of U.S. Dep't of the Treasury,* 383 F.3d 879, 887 (9th Cir. 2004); *Heisler v. Metro. Council,* 339 F.3d 622, 632 (8th Cir. 2003); *Weixel v. Bd. of Educ. of N.Y.,* 287 F.3d 138, 149 (2d Cir. 2002); *Haulbrook v. Michelin N. Am., Inc.,* 252 F.3d 696, 706 n.3 (4th Cir. 2001); *Selenke v. Med. Imaging of Colo.,* 248 F.3d 1249, 1266 (10th Cir. 2001).

magic words 'accommodation' or even 'disability.'" *Leeds v. Potter*, 249 F. App'x 442, 449 (6th Cir. 2007) (quoting *Smith v. Henderson*, 376 F,3d 529, 535 (6th Cir. 2004)). "Simply asking for continued employment can be a sufficient request for an accommodation." *Burress v. City of Franklin, Tenn.*, 809 F. Supp. 2d 795, 813 (M.D. Tenn. 2011) (citing *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 257 (6th Cir. 2000)). Viewing the facts in the light most favorable to Planck, it is possible that she requested a reasonable accommodation when she met with Bauer, presented the allergist's note, and asked to be removed from the Fiberglass Tubing Plant and reassigned to a different position.

Therefore, construing all disputed questions of fact and ambiguities in state law in favor of plaintiff, the Court finds that plaintiff has asserted a colorable retaliation claim against Bauer and Braumbaugh. The Court recognizes that Kentucky courts have not yet addressed the question of whether a request for a reasonable accommodation constitutes a protected activity under the KCRA. However, because Kentucky courts interpret the KCRA consistently with the ADA, the Court finds that Kentucky courts might impose liability against Bauer and Braumbaugh.

Accordingly, **IT IS ORDERED** that plaintiff Mary Planck's motion to remand (DE 4) is **GRANTED**. This matter is **REMANDED** to Madison Circuit Court and **STRICKEN** from this Court's active docket.

Dated April 7, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY